GENERAL ELECTRIC COMPANY v. DR. WILLIAM L. TURNER; ESTON Y. BRICKHOUSE; ED O'HERRON; SAMUEL H. JOHNSON; RALPH H. SCOTT; THORNE GREGORY; AND LINDSAY C. WARREN, JR.

No. 38

(Filed 11 July 1969)

1. **Administrative Law § 3; Injunctions § 11— injunction to restrain new bids for State contract — sufficiency of evidence**

   In this action to restrain defendants, officials of the State, from accepting new bids for television transmitting equipment after plaintiff had previously submitted the lowest bid for such equipment, plaintiff's evidence that a competitive bidder objected to an award of the contract to plaintiff on the ground that a small item in plaintiff's specifications failed to meet the bid requirements, that an agent of the competitive bidder was present at a hearing upon the bids held before the State Purchasing Officer but that plaintiff was neither notified nor present at the hearing, and that when a representative of plaintiff requested a hearing, he was told that an irrevocable decision had been made to call for new bids, *is held* insufficient to warrant the court in restraining the call for new bids, defendants having been given the right to make the administrative decision whether to call for new bids by G.S. 143-52.1 and by the bid proposal, and there being no evidence that defendants acted corruptly, in violation of the law or in excess of authority.

2. **Injunctions § 3; Mandamus § 2— exercise of discretionary duty**

   Neither mandamus nor mandatory injunction may be issued to control the manner of exercising a discretionary duty.

3. **Injunctions §§ 3, 11; Mandamus § 4; State § 4— action against individual State officials — action against State — consent to suit**

   Action to restrain individual defendants, officials of the State, from accepting new bids for television transmitting equipment and for a mandatory injunction requiring defendants to award the contract to plaintiff as lowest original bidder, *is held* to constitute an action against the State where every act charged against any defendant was performed in his capacity as representative of the State and related to a contract to be

performed by the State, and the State not having consented to the suit, defendants' demurrer should be sustained and the action dismissed.

On certiorari to review orders entered in the Superior Court of WAKE COUNTY (1) restraining, pendente lite, the defendants "from opening, accepting, awarding or in any way acting upon any bid submitted pursuant to Bid No. 690866 'Request for Bids on Television Transmitting Equipment' . . ." and (2) overruling the defendants' demurrer to the complaint. This Court entered an order, on defendants' petition, certifying this cause to the Supreme Court for review prior to determination by the North Carolina Court of Appeals. The cause was heard on briefs and oral arguments in the Supremee Court at a special session held June 23, 1969.

*Robert Morgan, Attorney General, Henry T. Rosser, Assistant Attorney General, Eugene A. Smith, Trial Attorney for the Defendants.*

*Joyner, Moore & Howison by Dan K. Moore and James M. Kimzey for the plaintiff.*

HIGGINS, J.

The plaintiff instituted this action in which it filed a verified complaint alleging (1) the defendant William L. Turner is Director of the North Carolina Department of Administration, "which Department is empowered . . . to supervise the letting of all contracts for the purchase of supplies, materials and equipment needed and required by all state departments, institutions and agencies"; (2) the defendant Brickhouse is "State Purchasing Officer in charge of the purchase and contract division of the Department of Administration, which division has been delegated the authority to supervise the letting of all contracts for the purchase of supplies, materials and equipment needed and required by all State Departments, institutions and agencies"; and (3) the other named defendants constitute the Advisory Budget Commission which is empowered to act with the Director of Administration in canvassing bids and awarding contracts.

The complaint further alleges the plaintiff, in response to the defendants' request, filed a responsible offer to comply with Bid No. 690462 by delivering special television transmitting equipment at the total price of $655,000 for Units I, II and III. Thee opening of the bids disclosed the plaintiff's was the lowest bid submitted on Units I, II and III. We here quote five paragraphs from the complaint:

"10. Plaintiff is informed and believes, and therefore alleges that after said bids were opened, the Radio Corporation of America, an unsuccessful bidder, objected by letter dated April 14, 1969, to

the Department of Administration to the awarding of the contract to the low bidder, the plaintiff, General Electric Company.

11. Plaintiff is informed and believes and therefore alleges that the defendants after receipt of the April 14 letter, permitted representatives of the Radio Corporation of America to be present at a hearing and to state their contentions concerning the letting of the contract pursuant to the request for bids without giving notice to the plaintiff and without giving the plaintiff an opportunity to be heard.

12. After some period of time, the contract had not been awarded to plaintiff and on or about the 26th day of April, 1969, Mr. Paul H. Fletcher, District Sales Representative of the plaintiff, telephoned the defendant Brickhouse to ascertain the status of the bid. During said telephone call, the defendant Brickhouse informed Mr. Fletcher that a decision had been made to reject all bids and to open the contract for rebidding. Mr. Brickhouse informed Mr. Fletcher that this decision has been 'irrevocably made' even though plaintiff had been given no notice and had no knowledge of the defendant's decision to consider rejecting the bids, and even though plaintiff had not been given opportunity to be heard concerning said decision.

13. Plaintiff requested a hearing in order to have an opportunity to be heard on the matter and when representatives of the plaintiff met with the defendants they were once again told that the decision to reopen the bidding had been 'irrevocably made' and that any hearing would be of no avail.

14. Although plaintiff has received no formal rejection of its bid and reason therefor, plaintiff is informed and believes and therefore alleges, that the sole reason for the 'irrevocable decision' made by defendants to reject plaintiff's low bid and rebid the contract was that the defendants contend that the specifications for a $3\frac{1}{8}$ inch patch panel called for in Item 36 of the specifications, attached hereto as Exhibit A, was in conflict with the specification contained in Item 1.7 of the instructions to bidders, which generally required that all components meet EIA standards."

The plaintiff alleged the patch panel, in all respects, complied with EIA standards and requested permission to submit documentary proof showing compliance. Mr. Brickhouse refused to hear the proof. The plaintiff further alleged the defendants' new call for bids repeated the same specifications with respect to the patch panel; that this item accounted for only $600 in a transaction involving $655,000.

The plaintiff prayed (a) that the defendants be restrained from accepting any new bids and (b) that a mandatory injunction be issued

requiring the defendants to award to the plaintiffs the contract according to its offer in response to Bid No. 690462 at the price of $655,000.

The defendants filed answer to the complaint denying the allegations upon the basis of which the plaintiff prayed for the restraining order. In addition, the defendants filed a demurrer to the cause of action alleged, upon these grounds:

1. The defendants, in their official positions as officers of the State, were carrying out the duties which the law required them to perform. This is, therefore, an action against the State of North Carolina which has not waived its sovereign immunity and has not consented to be sued.

2. The court is without authority to exercise the discretionary powers assigned to the defendants, or to require the defendants to execute a contract on behalf of the State.

3. The plaintiff does not allege facts sufficient to show any abuse of discretion on the part of the defendants in rejecting all bids and in readvertising for new submissions.

The defendants, in their official capacities and acting for the State under authority of G.S. 143-52.1, advertised for bids for the television transmitting equipment specified in No. 690462. The authorizing statute contains this provision: "Any and all bids received may be rejected." Form R-1, attached to the bid proposal, contains the following: "The State reserves the right to reject any and all bids . . ." The plaintiff concedes the right of the defendants to reject all bids, but contends the right may not be exercised arbitrarily or capriciously, but honestly and for good cause. The reason for rejecting the plaintiff's bid was failure of its 3⅛ inch patch panel to comply with Electronic Industries Association standards. The plaintiff argues the patch panel meets EIA standards, but the defendants refused to permit the plaintiff to offer documentary proof to substantiate its contention. On the contrary, the defendants, having heard the objection of a competitive bidder, claimed a discrepancy existed with respect to the provision for a 3⅛ inch patch panel on the ground it did not meet EIA standards. On this item the defendants deliberately and wrongfully refused to hear the plaintiff because the defendants had reached an "irrevocable decision" to reject all bids. The foregoing are the plaintiff's contentions.

Mr. Brickhouse filed a verified answer and affidavit stating in substance that four sites had been selected and money appropriated for the installation of a transmitter at each site to complete the educational television network of the University of North Carolina. Site

I was located in Winston-Salem, Site II at Farmville, Site III at Delco in Columbus County, and Site IV at Franklin in Macon County. A single bid was requested on each of the four sites; a single bid on the combination of I, II and III, and a single bid on the combination of all four.

After bids were received and opened, it was found the plaintiff was the lowest bidder on the equipment for the combination of Sites I, II and III, but RCA was the lowest bidder on the combined four sites. At the time bids were opened the acquiring agency was not ready for the installation at Franklin. Consequently, Site IV was to be eliminated and the bid on Site IV deleted. The deletion of Site IV made the plaintiff the low bidder and removed RCA from that category.

The plaintiff's bid on Sites I, II and III was $655,000. RCA's bid was $656,500. The plaintiff's bid on the four sites was $833,000. RCA's bid was $822,580. RCA filed some objection to the award of the contract to the plaintiff on Sites I, II and III. The exact ground of the objection is not disclosed. However, it appears there was a claim that a small item in the plaintiff's specifications did not meet EIA standards. At any rate, RCA's agent appeared at a hearing before the State Purchasing Officer. The plaintiff was neither notified nor present at the hearing.

[1]    When the plaintiff was not offered a contract, its agent requested a hearing. He was told that an "irrevocable decision" had been made to call for new bids. That decision may or may not be profitable, depending upon the future bidding. However, the making of an "irrevocable decision" in an important business controversy, after hearing one side and refusing to hear the other, does not qualify as commendable procedure. Nevertheless, the defendants were given the right to make the administrative decision whether to contract or to call for new bids. Evidence is lacking that the State officers acted either corruptly, or in violation of law, or in excess of authority. We conclude, therefore, the plaintiff's showing was insufficient to warrant the court in restraining the call for new bids. "The administrative features of the law are not to be set aside by recourse to the courts". *Pue v. Hood,* 222 N.C. 310, 22 S.E. 2d 896; *R. R. Comm. v. Oil Co.,* 310 U.S. 573, 84 L. Ed. 1368; *Schloss v. Highway Comm.,* 230 N.C. 489, 53 S.E. 2d 517.

[2]    We have discussed the merits of the case for the reason that the plaintiff has sued the defendants as individuals, and has obtained a restraining order. Neither mandamus nor mandatory injunction may be issued to control the manner of exercising a discretionary

duty. *Ponder v. Joslin,* 262 N.C. 496, 138 S.E. 2d 143; *Hospital v. Wilmington,* 235 N.C. 597, 70 S.E. 2d 833; *Harris v. Bd. of Education,* 216 N.C. 147, 4 S.E. 2d 328.

The plaintiff prays for this relief only: (1) That the defendants be permanently restrained from opening or accepting bids or awarding contracts based on any bids for the television transmitting equipment for Sites I, II and III; and (2) That by mandatory injunction the defendants be required to award the contract to the plaintiff as the lowest responsible bidder on the original offer submitted in response to request No. 690462.

[3] The record discloses that every act charged against any defendant was performed in his capacity as representative of the State, and related to a contract to be performed on behalf of the State. The facts and issues involved, and the relief demanded, permit only one conclusion: This is an action against the State of North Carolina. The suit was without the State's consent.

"It is axiomatic that the sovereign cannot be sued in its own courts or in any other without its consent and permission. . . . An action against a commission or board created by statute as an agency of the State where the interest or rights of the State are directly affected is in fact an action against the State." *Ins. Co. v. Unemployment Compensation Comm.,* 217 N.C. 495, 8 S.E. 2d 619; *Dredging Co. v. State,* 191 N.C. 243, 131 S.E. 665; *U. S. v. Lee,* 106 U.S. 196, 25 R.C.L. 412.

"That the sovereign may not be sued, either in its own courts or elsewhere, without its consent, is an established principle of jurisprudence in all civilized nations (citing many authorities). . . . In the absence of consent or waiver, this immunity against suit is absolute and unqualified." *Schloss v. Highway Comm., supra.*

"The State is immune from suit unless and until it has expressly consented to be sued. It is for the General Assembly to determine when and under what circumstances the State may be sued. When statutory provision has been made for an action against the State, the procedure prescribed by statute must be followed, and the remedies thus afforded are exclusive. . . ." *Ins. Co. v. Gold,* 254 N.C. 168, 118 S.E. 2d 792.

On the basis of the foregoing and many other authorities of like import, we conclude (1) this action is against the sovereign State of North Carolina; (2) the State has not consented to the suit; (3) the injunction was improvidently granted, and (4) the demurrer should have been sustained and the action dismissed.

Reversed.